COTHRAN & CONNALLY v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. October 21, 1922.)

No. 1946.

Internal revenue ⊜⟳9—Tobacco warehousemen held "brokers" engaged in sale of "produce" within statute imposing special tax on brokers.

Where producers sold tobacco through warehouse at sales conducted by warehousemen's auctioneer, and where warehousemen invoiced the tobacco in their own name and at their own risk to the buyer, who paid the price to warehousemen, who in turn paid the producers after deducting a certain commission, the warehousemen were "brokers" within Act Feb. 24, 1919, § 1001 (Comp. St. Ann. Supp. 1919, § 5980o), requiring brokers to pay a special tax and defining a "broker" as one "whose business it is to negotiate purchases or sales of * * * produce or merchandise for others," notwithstanding special tax on dealers in tobacco repealed by Act Sept. 8, 1916, § 407, subd. 2 (Comp. St. § 5980b), tobacco being "produce" within such statute and the warehousemen being engaged in negotiating the sale of it as "brokers" within the statute.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Broker; Produce.]

In Error to the District Court of the United States for the Western District of Virginia, at Lynchburg; Henry Clay McDowell, Judge.

Proceeding by Cothran & Connally against the United States. Judgment for defendant (276 Fed. 48), and plaintiffs bring error. Affirmed.

Samuel H. Williams and Randolph Harrison, both of Lynchburg, Va. (Harrison & Long, of Lynchburg, Va., on the brief), for plaintiffs in error.

C. E. Gentry, Asst. U. S. Atty., of Charlottesville, Va. (Thos. J. Muncy, U. S. Atty., of Roanoke, Va., and Carl A. Mapes, Solicitor of Internal Revenue, and C. A. Barnard, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for the United States.

Before WOODS, and WADDILL, Circuit Judges, and WEBB, District Judge.

WOODS, Circuit Judge. A statement of the case will demonstrate the correctness of the judgment of the District Court.

The petitioners, Cothran & Connally, tobacco warehousemen, brought this proceeding under paragraph 20, § 24, of Judicial Code (Comp. St. § 991, par. 20) to recover $52.05, tax and penalty collected from them under the following section of the act of February 24, 1919 (40 Stat. 1126 [Comp. St. Ann. Supp. 1919, § 5980o]):

"Sec. 1001. That on and after January 1, 1919, there shall be levied, collected and paid annually the following special taxes: (1) Brokers shall pay fifty dollars. Every person whose business it is to negotiate purchases or sales of stocks, bonds, exchange, bullion, coined money, bank notes, promissory notes, other securities, produce or merchandise, for others, shall be regarded as a broker."

The petitioners conduct a tobacco warehouse in the town of Brookneal, Va. Producers sold their tobacco through the warehouse. The tobacco was placed in piles on the warehouse floor, ticketed with the owner's name, lot number, and weight. Periodically sales were conducted by the auctioneer of the proprietors of the warehouse. The owners of the tobacco usually attended the sale. If the highest bid was not satisfactory to the owner he had the privilege of refusing it. If accepted, the warehousemen paid the owner the amount of price offered, less 3 per cent. commission. The warehousemen afterwards invoiced the tobacco in their own name and at their own risk to the buyer, who paid the price to them. There was no direct contractual relation between the buyer and the owner of the tobacco.

It is too plain for discussion that tobacco is produce, and that the petitioners were engaged in negotiating the sale of it as brokers, under the controlling definition of the statute.

In earlier statutes, enacted at different times from 1864 to 1914, a tax was levied on brokers negotiating the sale of goods, wares, produce, or merchandise, and on commission merchants receiving into possession for sale goods, wares or merchandise. In these same statutes dealers in tobacco were distinguished and a special and different tax levied on them. This special tax on dealers in tobacco was repealed in the statute of 1916 (39 Stat. 790, Comp. St. § 5980b). The argument of petitioners' counsel is that this course of past legislation imposing the special tax on dealers in tobacco indicated an intention to maintain a distinction between tobacco and other produce and merchandise in future legislation, however broad in terms, and that, too, although such future tax legislation repealed the special tax on dealers in tobacco.

We think the true view is that by the acts of 1916 and 1919 the Congress expressed as clearly as possible the intention to abolish the distinction in tax legislation between dealings in tobacco and other produce and merchandise by omitting the tax on dealers in tobacco as such; and by the act of 1919 to put tobacco in the same class with other produce and merchandise by exacting a tax on brokers—that is, all persons who negotiate the sale of any produce or merchandise, including tobacco.

We can see no ground whatever for holding that the Congress meant to make persons who negotiated the sale of tobacco a privileged class, exempt from the tax imposed on those who negotiated the sale of wheat, corn, or other produce.

Affirmed.